THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ROBERTO MÉNDEZ NADAL and MANUEL RIVERA COLÓN, Defendants and Appellants.

No. CR-68-85.    Decided June 27, 1969.

*E. Armstrong Watlington* for appellants. *Rafael A. Rivera Cruz, Solicitor General, Peter Ortiz, Acting Deputy Solicitor*

*General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On February 14, 1965, at about 10:30 in the nighttime, several persons were at the grocery store bar "El Vencedor," situated at Providencia Street in front of Llorens Torres Housing Development. At that time, Roberto Méndez Nadal entered there with a revolver in the hand, followed by Manuel Rivera Colón, who had a dark object in the right hand at the level of the pocket aiming at the persons sitting at the counter. They were followed by other persons who remained outside the business. A shooting began, with the result that Roberto Solís Andújar was mortally wounded, and Aníbal Masas Delgado and Miguel Colón Avilés received bullet wounds.

On account of these events, the prosecuting attorney filed separate informations against Roberto Méndez Nadal and Manuel Rivera Colón for the offenses of murder in the first degree, two offenses of assault to commit murder, and violations of §§ 8 and 6 of the Weapons Law.

The cases for felonies charged to both defendants were heard jointly before a jury. The latter returned a verdict declaring both defendants guilty of the offenses charged against them. The judge also declared them guilty of violation of § 6 of the Weapons Law.

In this appeal appellants assign the commission of the following sole error:

"The use by the jury of codefendants' extrajudicial statements, prejudiced substantially their right to the due process of law."

In order to support the charges, the prosecuting attorney introduced oral evidence, objective evidence consisting of several revolver bullets, and the two extrajudicial statements

of defendants made in the course of the investigation of the facts.

Witnesses for the prosecution testified that they saw when the two defendants, Méndez in front and Rivera Colón following, arrived at the grocery store bar, the former fired the revolver at the group of persons who were at the counter. The shots were fired from an entrance door, without there previously being any conversation between those who were at the bar and the newly arrived. They did not observe that shots were fired from the inside towards the outside, nor did they see those who were inside firing. When the shots were fired, they saw two human bodies fall to the floor, one being that of Roberto Solís Andújar, who died as a result of the bullet wounds received, and the other, that of Aníbal Masas Delgado. They also saw Colón Avilés wounded. The witnesses for the prosecution could not identify the dark object which Manuel Rivera Colón had in his right hand, at the height of the pants' pocket, and aiming at the people sitting at the counter. Neither could they say whether or not Rivera Colón had fired the revolver.

The extrajudicial statement made by defendant Roberto Méndez in the course of the investigation was introduced by the prosecuting attorney and admitted in evidence without defendants' objection. In this statement Méndez incriminated the other defendant Manuel Rivera Colón. He denied that he had weapons and that he had fired. On the contrary, he stated that upon entering the business he saw Rivera Colón firing with a revolver, which the latter carried at the waist, and he saw that a person, known as Caña, fell to the floor.[1]

---

[1] We copy from said statement:

"Prosecuting Attorney: Now I ask you, do you wish to make any statement?

"W—Yes, sir.

"P.A.—Do you want to consult with any attorney?

"W—No, sir, because what I am going to say is the truth.

474

The sworn statement made by defendant Manuel Rivera
Colón is a confession. In the same he admits that he fired
five times at "Caña," whom he saw falling down, and at

"Prosecuting Attorney: Go on.

"W—That last night, February 14, 1965, I was walking with Manuel
Rivera Colón, k/a 'Papo,' Pedro Pizarro, k/a 'Perucho,' Ramón Alvarez,
k/a 'Mon,' and another whom I know by the name of Roberto. Then some
friends of ours told us that a person k/a 'Caña,' and another who is called
'Rata,' and another whom I know by the name of 'Tony,' were looking for
us. When they told us so, we went up to the Bar El Vencedor, where we
had been told they were. There were 'Caña,' 'Tony,' 'Rata,' and two others.
When we went to the Bar El Vencedor, 'Papo' carried a revolver at the
waist. I entered the bar and immediately saw 'Papo' firing and I saw that
'Caña' fell to the floor. Then I saw that 'Rata,' who was in the business,
fired towards the outside, that is, that he also fired towards the outside.
There I left running together with 'Perucho.'

"I also wish to add that 'Caña,' who now I learn was called Roberto
Solís Andújar, around Christmas time had fired at 'Papo' and had
wounded him.

"Q—Did you fire at any time in that business when the events
occurred?

"W—No, sir, I did not have any weapon on me nor did I fire.

"Q—When this incident occurred, did a discussion arise?

"W—No, sir, there was no discussion, nobody said anything. I entered
the business and I heard immediately the shots and I saw 'Caña' fall to
the floor and I also saw 'Rata' who fired.

"Q—Do you wish to say something else?

"W—Nothing else, that is what I have to say up to this time, which
was what happened and what I saw.

"Prosecuting Attorney: Méndez, have you made this statement
voluntarily?

"W—Yes, sir.

"Q—Have you been ill-treated, beaten or threatened by anyone?

"W—No, sir, the Detective has behaved very well, they allowed me to
make a telephone call and I called the owner of the house where I work,
and they even gave me lunch.

"Q—When you went to look for the wounded person and the one who
died, did you already know that they were looking for you?

"W—Yes, sir, because we had already been told that.

"Q—The same, that you had fought with someone before?

"W—Yes, sir, I had fought with 'Tony,' and 'Rata' had hit me with
a bottle.

"Q—When you arrived at the place, was there a fight?

"W—No, sir, nor any discussion, only the shots were heard.

"Q—Did you call your relatives?

Aníbal Masas and at "El Rata." He did not say that Méndez had fired.[2]

With respect to these statements, the judge charged the jury in the following manner:

"The court charges the lady and gentlemen of the jury that this statement which has just been read and which was made

---

"W—I called my relatives from this office, that is, where I work and they agreed to get me some bailors if something happened." (People's Exhibit 9, pp. 1–2.)

[2] We copy part of this statement:

"Q: Do you wish to make any statement?

"A: Yes, sir. As to the attorney, my father will get him for the day of the trial. That on December 15, 1964, I was at a bar called El Vencedor, at Providencia Street, Santurce. Then, three persons, whom I know as 'El Caña,' who now I learn was named Roberto Solís Andújar, and another who now I learn was called El Rata, and who now I also find out was named Miguel Colón Aviles, arrived at that place. When they arrived at the bar, El Caña said in a loud voice: 'I am going to shit on the mother of everyone who is here.' I told him: 'Old man, that is not so,' and then El Caña grabbed a chair and lifted it and tried to hit me with it. I was in the company of my friend Roberto Méndez, who has always been my friend. When El Caña tried to hit me with the chair, El Rata, that is, Miguel Colón Aviles, came and hit Roberto Méndez on one of his ears, now I don't remember which, with a bottle. Then, when El Caña saw that we were strong, he went outside the bar, since I was already outside also because I was going to leave, and he came and told me: 'look sucker, stop there' and then he came and fired a shot which the revolver misfired, and then the second shot which he fired at me hit me on the right shoulder and then he continued firing harum-scarum. Two months elapsed since then and on this Sunday, this last one, February 14, 1965, I was going to the court of Llorens Torres Housing Development to see if they were playing basketball or softball, to join the game. When I was entering the court, El Caña, that is, Roberto Solís Andújar, saw me and told me: 'You do not remember what I once did to you.' Then I told him that that had already happened, but that if he wanted we could have a fist fight and later shake hands. We began to fight and I punched him and he staggered and then I saw that he dropped a revolver, which I saw was caliber .38, black, long-barreled. Then I grabbed the revolver and put my hand, that is, the finger on the trigger, but then I changed my mind. Then, Roberto Solís, k/a El Caña, began to run and told me: 'I am going to your ward and I am going to kill you.' Then, since I live in Villa Palmeras and he at Llorens Torres Housing Development, I went in another direction so that I would not have to meet him again. Then, the revolver dropped by El Caña, I took it to my house. Around 9:30 P.M. of that Sunday, February 14, 1965, El Caña arrived at my ward and said in a loud

**476**

by Roberto Méndez Nadal, may be considered solely in connection with the case of Roberto Méndez Nadal; it cannot be taken into consideration by you in any manner as evidence against the other codefendant Manuel Rivera Colón. This cannot be taken into consideration against Manuel Rivera Colón. And as to this other statement of Manuel Rivera Colón, it can neither be taken into consideration for the other defendant. It may be taken into consideration only for the defendant who makes it. Neither in favor, nor against; the statement made by Roberto Méndez Nadal cannot be taken into consideration by you, neither in favor nor against Manuel Rivera Colón, nor the statement made by Manuel Rivera Colón, which is going to be read to you, can be taken into consideration against the other defendant." (Tr. Ev. p. 69, 3d piece.)

---

voice: 'Tell Papo, those who are hearing me, that when I find him, I am going to kill him.' 'I am El Caña, from building No. 32 of the Housing Development.' I heard it because when he said it I was at a nearby place from where he was, in a dark place and behind a car. There, my mind was confused and I went to look for him and I decided one thing or the other. When I was going towards Llorens Torres and when I had not yet crossed the avenue, I saw El Caña who was inside the Bar El Vencedor at Providencia Street. I was with Roberto Méndez and I already carried the revolver dropped by El Caña when we had met and fought earlier. At the business there were two doors open and I entered by the one nearer to a slot machine. I saw El Caña who was sitting at the counter with Aníbal Masas and El Rata, that is, Miguel Colón Avilés, who was standing, leaning against the slot machine. There, with the revolver dropped by El Caña that same day when we fought and which I describe in this statement and which was loaded with six bullets, I fired twice at El Caña in the back; I also fired at Aníbal Masas, and I fired another shot at El Rata. I remember that I fired five times. When I saw that El Caña fell wounded, then I fired at Aníbal Masas and later at El Rata. I threw my revolver on top of a table, 'I threw' and I left. When I came into the place surrounded by grating ('enrejillao'), I grabbed Roberto Méndez by a hand and pulled him outside and as we were leaving, there it was that I was fired at twice from inside the bar, from the door where the slot machine was. I continued with Roberto down Colton· Street and I went to sleep and Roberto also. In the morning I went to work and when I was at work I heard some rumors that the brothers of El Caña were looking for me to kill me. Then, I looked for a friend of mine whom I know as Sotero, and policeman Felipe, whose last name I do not know, but who works in the police station of Bo. Obrero, and I explained to them what was happening to me. Sotero told me then that he was going to get me some bailors. I want to make clear that I turned myself in of my own free will." (People's Exhibit 12.)

Defendant Manuel Rivera Colón testified at the trial. He sought to prove with his testimony and with that of his sister, that on the day following the events, a group of persons which he could not identify, went to his sister's house where he was, and told him, although not in the same words, to make himself liable for the death of Solís (k/a El Caña), or he would be killed, and that it was because of fear that he confessed before the prosecuting attorney. He repudiated his confession denying that he had fired against the persons who were wounded and affirmed that everything stated by him before the prosecuting attorney was a lie, an invention of his to avoid being killed.

At the close of the prosecuting attorney's cross-examination, Méndez' counsel requested permission to cross-examine. The prosecuting attorney agreed, but Rivera Colón's counsel objected and the judge granted the objection on the ground that in his testimony before the court this defendant had not incriminated Méndez.

Defendant Méndez also took the witness stand and testified in his defense. He denied that he had fired, he denied having seen a revolver on Rivera Colón, and denied knowing who fired the shots, even though he heard them behind him at the moment when they reached the grocery store bar "El Vencedor." He testified that what he told the prosecuting attorney under oath during the investigation was because he was informed about it after the events.

The other defendant's counsel did not request to examine, nor did he examine Méndez.

In support of the error assigned, appellants invoke the cases of *Reyes* v. *Superior Court*, 84 P.R.R. 27 (1961); *People* v. *Cruz*, 87 P.R.R. 124 (1963), and *Bruton* v. *United States*, 391 U.S. 123.

At the time when the trial was held in this case, the Rules of Criminal Procedure of July 30, 1963 were in effect. Rule 91 of these Rules provides that "at the request of a

codefendant the court shall order a separate trial when several persons are accused and one of them shall have made declarations, admissions or confessions pertinent to the case which might affect said codefendant adversely, unless the prosecuting attorney announces that he will not offer in evidence said declarations, admissions or complaints, nor shall he make, in any manner whatsoever, reference thereto during the trial."

■ This rule put an end to the discretional power which since Act No. 1 of November 10, 1950, our courts had to grant a separate trial to a defendant when another codefendant had made declarations, admissions or confessions which affected said defendant adversely. The serious problems which arose concerning the violation of the due process of law when a separate trial was denied and a declaration or confession of a defendant was admitted, which affected adversely the other codefendants and prevented them from cross-examining him, were also eliminated by this rule. Even though in *Delli Paoli* v. *United States*, 352 U.S. 232, the Supreme Court of the United States had sanctioned under certain circumstances the practice that the adverse effect for a defendant of the confession or extrajudicial statement of another codefendant, which incriminated the former, could be overcome by instructions to the jury in the sense that such statement or confession could be considered only as to the confessor, said case was subsequently overruled by that of *Bruton* v. *United States*, 391 U.S. 123, to which retroactive effect was given in that of *Roberts* v. *Russell*, 392 U.S. 293.

■ As we stated at the beginning of this opinion, separate informations were introduced against appellants. We are not concerned here with persons jointly accused in one or several informations. In this case appellants could have been joined in one or several informations. As separate informations were introduced against appellants, the court had

discretional power to order that the informations be jointly tried, pursuant to the provisions of Rule 89 of the Rules of Criminal Procedure;[3] but if it is shown that a defendant or The People shall be prejudiced by a joint trial, the court may order a separate trial of defendants, pursuant to the provisions of Rule 90,[4] or it may grant any other remedy at law.

■ Appellants are precluded from attacking in this case the holding of a joint trial.

When the cases were called for trial, the presiding judge asked whether, considering that different informations on the same facts were involved, there was any objection to hear them jointly. They agreed. Counsel for one of the defendants said:

"On our part there is no objection. We have consulted with the distinguished colleague, then we have examined everything and we have reached the conclusion that it having been at the same time and at the same place, and the same people involved, there is no objection." (Tr. Ev. p. 2, 1st piece.)

In the same course of the trial, the other defendant's counsel stated:

"Your Honor, when this case was called for hearing we said that we were ready for trial and we said that we did not have any objection to hear the case jointly with that of the defendant who has just testified. During the interviews which we had with the distinguished colleague, from the readings that we made of the confessions of defendants' declarations and of the documents

---

[3] Said Rule provides:

"The court may order that two or more informations or complaints be jointly tried where the offenses and defendants, if more than one, could have been joined in a single information or complaint. The prosecution shall continue as if it were a single information or complaint." (Rules of Criminal Procedure, 1963, 34 L.P.R.A., 1968 Supp. p. 184.)

[4] Said Rule 90 of the Rules of Criminal Procedure, provides:

"If it is shown that a defendant or The People shall be prejudiced by joining several offenses or defendants in a single information or complaint, or by joint trial, the court may order a separate trial of offenses or of defendants, or grant any other remedy proper at law." (Rules of Criminal Procedure, 1963, 34 L.P.R.A., 1968 Supp. at p. 184.)

of the case, we understood, at least this attorney understood, that there were not opposing, contradictory conversations in this case, and that therefore, we could hear it jointly." (Tr. Ev. p. 103, 3d piece.)

Before this procedural situation when the sworn statements of the two defendants were admitted in evidence, the judge took the only measure available at that moment to guarantee them a fair trial, the same consisting in charging the jury, on more than one occasion, that the extrajudicial statement of one of the defendants could not be taken into consideration as to the other.

■ If what has been said would not suffice and this were not sufficient to conclude that the error assigned by appellants was not committed, it does not appear from the record that their rights to the due process of law were violated, irrespective of their consent to the holding of a joint trial. Let us see. In his sworn statement defendant Roberto Méndez Nadal incriminates the other defendant Manuel Rivera Colón, for, as that statement reads, Méndez saw Rivera Colón carrying a revolver at the waist and saw him firing at the group of persons who were wounded. However, Méndez testified during the trial. The other defendant had the opportunity to cross-examine him but he did not request it, nor did he do it. He was not deprived, therefore, of his right to cross-examination, which is the basis of the decision in the *Bruton* case, *supra*.

The extrajudicial confession made by Manuel Rivera Colón affects adversely defendant Méndez only, insofar as it places him at the scene of the crime and walking in the company of Rivera Colón. It is true that the court did not allow Méndez' counsel to cross-examine Rivera Colón, because the latter's counsel objected. The court erred in acting thus, for even though Rivera Colón limited his oral testimony to challenge the willfulness of his confession, the prosecuting attorney faced him with said statement. The error, however,

was not prejudicial because Méndez himself testified at the trial that he was walking in the company of Rivera Colón and went with the latter to the grocery store bar where the events occurred. So that if Méndez himself places himself walking in the company of Rivera Colón until reaching the grocery store bar, Colón's confession adds nothing thereto.

The error assigned not having been committed, the judgments appealed from will be affirmed.